CONKLIN *v.* WILSON and Another, Administrators.

*A.* indorsed an accommodation bill drawn by *B.* for the purpose of being discounted at a bank. The amount of the bill was left blank, but the amount to be drawn upon it was not to exceed 300 dollars. The proceeds were to be used by *B.* in the purchase of cattle. The bank having refused to discount the bill, *B.* sold it to *C.*, first stating to *C.* that it was an accommodation bill, and was to have been discounted in bank for 300 dollars. *C.* filled the blank with 400 dollars. *B.* realized from the sale of the bill 387 dollars, out of which he applied 325 dollars to the purchase of the cattle in contemplation when *A.* indorsed the bill. *A.*, when he learned that the bill had been sold to *C.* and filled up as aforesaid, stated that in all probability he would have to meet it; and *B.* thereupon transferred a note to *A.* for 200 dollars, but the note was without consideration and of no value. The bill was protested for non-payment, and notice given, &c. In a suit by *C.* against the administrators of *A.*, upon the indorsement, *held*, that *C.* was not a *bona fide* holder, and could not maintain the suit.

ERROR to the *Wayne* Circuit Court.

DAVISON, J.—*Conklin* sued *Wilson* in assumpsit on a bill of exchange for 400 dollars. Since *Wilson's* death the suit has proceeded in the name of his administrators. The bill was drawn by one *John Kenley*, accepted by *Seth Kenley*, and indorsed by *Wilson*. Plea, non assumpsit, verified by oath. The Court tried the cause and found for the defendants. Motion for a new trial overruled, and judgment against the plaintiff.

The bill in question was indorsed by *Wilson* for the accommodation of *John Kenley*, the drawer, and was to be discounted at the *Richmond* branch bank. No amount was inserted in the bill; but it was understood between *Wilson* and *Kenley* that the amount drawn would be 300 dollars, and when drawn was to be invested in cattle,

*Monday, June 5.*

which *Kenley* at that time desired to purchase. The bank refused to discount the bill. It was then sold to the plaintiff. Prior to this sale *Kenley* told the plaintiff that it was an accommodation bill and was to be discounted in bank for 300 dollars. With a knowledge of all these facts the plaintiff purchased it and filled the blank with 400 dollars. By the sale *Kenley* realized 387 dollars, out of which 325 dollars were applied to the purchase of the same cattle in view at the time of the indorsement. *Wilson*, when informed of the sale and filling up of the bill, stated that in all probability he would have to meet it. Thereupon *Kenley* transferred to him (*Wilson*) a note for 200 dollars. This note was shown to be without consideration and of no value. The bill was protested for non-payment, and notice of protest duly given, &c.

In the absence of rebutting proofs, the possessor of a bill will be deemed a *bona fide* holder for value. This the law presumes. But how stands the case upon the record? The bill sued on was indorsed upon the condition that it should be discounted at the *Richmond* branch bank, and for an amount not to exceed 300 dollars. The indorser had a perfect right to annex such a condition to his engagement. When the bill was rejected by the bank, the object of it failed, and it ought, in good faith, to have been returned to the parties who gave it. Instead of that, however, *Kenley* sold the bill to the plaintiff. No doubt that sale was made in violation of the agreement upon which it was indorsed. Still, if the plaintiff had purchased the bill without notice of that agreement, his right to recover in this suit could not be controverted. But on that point the evidence is conclusive. The plaintiff, when he took the bill, was fully notified that it was accommodation paper, and also of the arrangement on which the indorsement had been made. With that notice he received the bill and filled up the blank with 400 dollars. This was a direct fraud upon *Wilson*. It follows that the plaintiff does not hold the bill in good faith. Having paid for it was not sufficient. He was not entitled to recover, unless he had taken it *bona fide*, and for a valuable consideration. Both were neces-

sary. 10 Johns. R. 198, 230.—15 *id.* 269.—18 *id.* 166.—15 Wend. 566.—1 Denio 583.—6 Ohio 246.

But it is contended that *Wilson* assented to the sale and filling up of the bill; that such assent is proved, first, by his attempt to make arrangements with the drawer for indemnity; and, secondly, by permitting the bill to remain with the holder until suit, without raising any objection. We perceive nothing in these positions that would excuse the fraudulent conduct of the plaintiff. The evidence will not justify the assumption that *Wilson* attempted to procure an indemnity. But suppose it did: he had the right to provide for any contingency; nor would the exercise of such right be considered a waiver of any legal defence he might have against the bill. The argument that *Wilson* raised no objection until he was sued, is alike untenable. The plaintiff, when he took the bill, was fully advised of the agreement under which it was indorsed. It was therefore needless for *Wilson* to call upon him and reiterate the provisions of that agreement.

There was some evidence given on the trial upon the inquiry whether *Kenley* had placed in *Wilson's* hands effects for the purpose of securing him against his liability upon the indorsement. That point was left in doubt. But it was a pure question of fact, has been decided by the Court sitting as a jury, and we are not inclined to disturb the decision.

*Per Curiam.*—The judgment is affirmed with costs.

*J. Rariden,* for the plaintiff.

*J. S. Newman* and *J. P. Siddall,* for the defendants.

